## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLEN KELLY, | : | |
| | : | Civil No. 1:11-CV-1221 |
| Plaintiff, | : | |
| | : | (Judge Conner) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| DEPUTY WARDEN | : | |
| TONY HAUCK, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case.

This is a *pro se* civil rights action brought by Allen Kelly, a prisoner formerly

housed in the Lebanon County Prison.  Kelly filed this action in the Court of Common

Pleas of Lebanon County on June 20, 2011. (Doc. 1)  In his initial *pro se* complaint,

Kelly named a single defendant, Anthony Hauck, the deputy warden at the prison, and

lodged an array of claims against defendant Hauck.

For example, Kelly alleged in general terms that Hauck had restricted his access

to legal materials, complaining about prison postage policies and limitations on access

to the prison law library. (Id.)  Kelly did not identify how these policies, problems or

procedures had adversely affected the litigation of any cases by this prisoner, a

prodigious if prodigiously unsuccessful *pro se* litigant.[1]

---

[1]See e.g.,  Kelly v. York County Prison, No. 4:02-CV-700; Kelly v. York
County Prison, No. 4:08-CV-1813;  Kelly v. York County Prison, No. 4:08-CV-

Kelly also complained that Hauck had ordered him placed in the prison's special housing unit "as a result of an incident." (Id.)  Kelly further complained that prison officials "biasly" found him guilty of misconduct while housed at the Lebanon County Prison. (Id.)  Finally Kelly asserted that some unnamed persons on some unidentified date had sprayed him in the face with "oleoresin capsicum." (Id.)  On the basis of these allegations, Kelly sought $50,000 in damages from defendant Hauck. (Id.)

On June 28, 2011, the defendant removed this action to federal court. (Doc. 1)  Three days later, the defendant moved to dismiss this complaint. (Doc. 2)  We initially directed the plaintiff to respond to this motion to dismiss by August 1, 2011. (Doc. 3)  When Kelly, who had been transferred from the Lebanon County Prison, sought an extension of time in which to respond to this motion, (Doc. 7), we granted this request and extended Kelly's motion response deadline to September 19, 2011, approximately 75 days after this motion was filed. (Doc. 8)  As this deadline approached, Kelly sought a second, two-month, extension of this motion response deadline, (Doc. 10), which the Court denied. (Doc. 11.)  Kelly then failed to comply with the Court's briefing schedule, and has neglected to respond in any fashion to this pending motion to dismiss.  Therefore, in the absence of any timely response by Kelly, we will deem the motion to be ripe for resolution.

---

 2027; Kelly v. Kline, No. 1:10-CV-2658.

For the reasons set forth below, we recommend that the motion to dismiss be granted.

## II.   <u>Discussion</u>

### A.   <u>Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted</u>.

At the outset, under the Local Rules of this Court the plaintiff should be deemed to concur in this motion, since Kelly has failed to timely oppose the motion, or otherwise litigate this case.  This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the rules of this Court warrants dismissal of the action, since  Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to  motions and  provides that

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion.  *Any party who fails to comply with this rule shall be deemed not to oppose such motion*.  Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition.  A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (1991)." Williams v. Lebanon Farms Disposal, Inc., No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). In this case Kelly has not complied with the local rules, or this Court's order, by filing a timely response to this motion. Therefore, this procedural default compels the Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. *See* Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...." McCurdy v. American Bd. of Plastic Surgery, 157 F.3d 191, 197 (3d Cir.1998).

Lease v. Fishel, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this Court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." Id. Therefore, we are obliged to ensure that one

party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here.  In this case, the plaintiff has failed to comply with Local Rule 7.6 by filing a timely response to the motion to dismiss filed by the defendant.  This failure to respond now compels us to apply the sanction called for under Rule 7.6 and deem the plaintiff to not oppose this motion to dismiss.

## B.    **Dismissal of this Case Is Also Warranted Under Rule 41**.

Beyond the requirements imposed by the local rules of this Court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).  Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted).  That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors.  As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility;

(2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.   Recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action.  At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the Plaintiff, who has failed to abide by court orders and has neglected to litigate this case.

Similarly, the second Poulis factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action.  The Plaintiff's failures to litigate this claim or comply with court orders now delays the resolution of

this action.  In such instances, dismissal of the case clearly rests in the discretion of the trial judge. <u>Tillio v. Mendelsohn</u>, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); <u>Reshard v. Lankenau Hospital</u>, 256 F. App'x 506  (3d Cir. 2007) (failure to comply with discovery compels dismissal); <u>Azubuko v. Bell National Organization</u>, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third <u>Poulis</u> factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate.  The plaintiff has now failed to timely file pleadings, and  comply with orders of the Court.

The fourth <u>Poulis</u> factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff.  At this juncture, when the Plaintiff has failed to comply with instructions of the Court directing the plaintiff to take specific actions in this case, the Court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While <u>Poulis</u> also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing <u>Poulis</u> agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders,  lesser sanctions may not be an effective alternative. <u>See, e.g.,</u>

Briscoe v. Klaus, 538 F.3d 252, 262-63 (3d Cir. 2008); Emerson, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the Court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims. In our view, however, consideration of this factor also weighs heavily in favor of dismissal of this action since Kelly's claims fail on their merits.

### C.    Kelly's Claims Fail On Their Merits

The defendant has filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically

enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted."

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not

alleged."   <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).  As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do."  <u>Id.</u> at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level."  <u>Id.</u>  In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In <u>Ashcroft v. Iqbal</u>, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  <u>Id.</u> at 1950.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u> at 1949.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

1.     **Kelly Has Failed to Properly Exhaust His Administrative Remedies**

At the outset, in this motion to dismiss the defendant asserts, without contradiction, that Kelly failed to exhaust his administrative grievance remedies before filing this lawsuit. Kelly's failure to timely pursue these administrative remedies may have substantive significance for the plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Section 1997e's exhaustion requirement applies to a wide-range  of inmate complaints, including damages complaints like those made here.  See Spruill v. Gillis, 372 F.3d 218 (3d. Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts.  This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion

requirement promotes important public policies.   As the United States Court of

Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). ... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency. . . . Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court.

Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).  Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x. 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x. 178 (3d Cir. 2006).

This broad rule admits of one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d. Cir. 2000).  However, case law recognizes a

clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances", Harris v. Armstrong, 149 F.App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis v. Warman, supra, 49 F. App'x at 368. See also, Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir.2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an

inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him. Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003). Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. Oliver v. Moore, 145 F. App'x 731 (3d Cir. 2005)(failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

Here, Kelly has not in any fashion contested the claim that he failed to exhaust his administrative remedies with respect to any of the matters set forth in his complaint. Nor has Kelly shown that "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis v. Warman, supra, 49 F. App'x at 368. Therefore, the PLRA's exhaustion requirement applies here and now bars consideration of Kelly's current complaints.

### 2. Kelly Cannot Convert His Dissatisfaction with The Handling of Disciplinary Hearings and Grievance Appeals Into Federal Civil Rights Violations

In addition, this complaint fails for a more fundamental reason. The gravamen of many of Kelly's various allegations is apparently his dissatisfaction with the responses he received from defendant Hauck on various grievances which he lodged. This claim, which lies at the heart of Kelly's complaint, fails for several reasons. First, it is clear that inmates cannot sustain constitutional claims against prison officials based solely upon assertions that those officials failed to adequately investigate their past grievances. Inmates do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 137-38 (1977); Speight v. Sims, No. 08-2038, 283 F. App'x 880, 2008 WL 2600723 at *1 (3d. Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See

also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007)

("[M]ere concurrence in a prison administrative appeal process does not implicate a

constitutional concern.").  As the United States Court of Appeals for the Third Circuit

recently observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of
> Corrections or Superintendents, were named only for their supervisory
> roles in the prison system. The District Court properly dismissed these
> defendants and any additional defendants who were sued based on their
> failure to take corrective action when grievances or investigations were
> referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d
> Cir.1988) (defendant in a civil rights action must have personal
> involvement in the alleged wrongs; liability cannot be predicated solely
> on the operation of respondeat superior ); see also  Antonelli v. Sheahan,
> 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures
> do not give rise to a liberty interest protected by the Due Process Clause)
>
> Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

In this case, fairly construed, Kelly's claims against the defendant consist of

little more than assertions with dissatisfaction with their processing of this inmate's

past grievances, assertions which as a matter of law do not suffice to state a

constitutional tort claim.  Therefore, the defendant is entitled to dismissal of this case.

Nor can Kelly premise a constitutional claim on a conclusory assertion that

defendant Hauck did not fairly consider his disciplinary appeals. In bringing

constitutional claims against correctional staff in this context, Kelly faces an exacting

burden of proof.  It is well established that "[p]rison disciplinary proceedings are not

part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.

A prison administrative disciplinary or grievance determination comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, it is well-settled that a claim that a prison officials statement or report in an administrative proceeding was false, standing alone, does not state a valid Bivens cause of action. As the United States Court of Appeals for the Third Circuit has aptly observed: "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were

provided. See e.g., Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir.1986) (the filing of false charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984)." Richardson v. Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007). See also Booth v. Pence, 141 F. App'x 66 (3d Cir. 2005); Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).

These principles are directly applicable here and compel dismissal of Kelly's claims on their merits.  In short, Kelly cannot convert his personal dissatisfaction with the tone, tenure or content of prison officials' replies to what were unexhausted grievances on his part into an issue of constitutional dimension.  Since Kelly's complaints in this regard simply do not rise to the level of constitutional infractions, Kelly's pleadings fail to state constitutional claims upon which relief can be granted and these complaints should be dismissed.

## 3.     Kelly has not Stated a Colorable Right-of-Access to the Courts Claim

Kelly's next remaining claim in this lawsuit entails an assertion that defendant Hauck violated the plaintiff's right of access to the courts.  This claim  calls upon us to also examine the contours of the constitutional right of access to the courts.  Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817 (1977).  As

the Supreme Court initially observed, this right of access to the courts is satisfied

when corrections officials facilitate "meaningful" access for those incarcerated, either

through legal materials or the assistance of those trained in the law. Id. at 827 ("[T]he

fundamental constitutional right of access to the courts requires prison authorities to

assist inmates in the preparation and filing of meaningful legal papers by providing

prisoners with adequate law libraries or adequate assistance from persons trained in

the law.")

Two decades later, in 1996, the Supreme Court provided further definition and

guidance regarding the scope and nature of this right of access to the courts in Lewis

v. Carey, 518 U.S. 343 (1996).  In Lewis, the Court eschewed efforts to define this

right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete

outcomes when assessing such claims.  As the Court observed:

> Because Bounds did not create an abstract, freestanding right to a law
> library or legal assistance, an inmate cannot establish relevant actual
> injury simply by establishing that his prison's . . .  legal assistance
> program is subpar in some theoretical sense. . . .  Insofar as the right
> vindicated by Bounds is concerned, "meaningful access to the courts is
> the touchstone," id., at 823, 97 S.Ct., at 1495 (internal quotation marks
> omitted), and the inmate therefore must go one step further and
> demonstrate that the alleged shortcomings in the  . . . legal assistance
> program hindered his efforts to pursue a legal claim. . . . . Although
> Bounds itself made no mention of an actual-injury requirement, it can
> hardly be thought to have eliminated that constitutional prerequisite. And
> actual injury is apparent on the face of almost all the opinions in the 35-
> year line of access-to-courts cases on which Bounds relied, see id., at
> 821-825, 97 S.Ct., at 1494-1497. Moreover, the assumption of an actual-

injury requirement seems to us implicit in the opinion's statement that "we encourage local experimentation" in various methods of assuring access to the courts. <u>Id</u>., at 832, 97 S.Ct., at 1500.

<u>Lewis v. Casey</u>, 518 U.S. 343, 351-52 (1996).

Thus, following <u>Lewis</u> courts have consistently recognized several guiding principles which animate access-to-court claims by prisoners.  First, such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. <u>See, e.g.</u>, <u>Oliver v. Fauver</u>, 118 F.3d 175 (3d Cir. 1997); <u>Demeter v. Buskirk</u>, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); <u>Castro v. Chesney</u>, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31, 1998).  Moreover, consistent with the Supreme Court's express view that "'we encourage local experimentation' in various methods of assuring access to the courts," <u>Lewis v. Casey</u>, 518 U.S. at 352, courts have long recognized that public officials can provide meaningful access to the courts through a wide variety of means. <u>See, e.g.</u>, <u>Tinsley v. Del Rosso</u>, No. 08-1251, 2008 WL 2236598 (D.N.J. May 30, 2008); <u>Tormasi v. Hayman</u>, No. 07-5683, 2008 WL 1995125 (D.N.J. May 6, 2008); <u>Annis v. Fayette County Jail</u>, No. 07-1628, 2008 WL 763735 (W.D. Pa. March 20, 2008); <u>Hunter v. Shoupe</u>, No. 06-1023, 2007 WL 120030 (W.D. Pa. Jan. 10, 2007); <u>Cook v. Boyd</u>, 881 F.Supp. 171, 176 (E.D.Pa.1995); <u>United States ex rel. Russell v. Hendrick</u>, 376 F.Supp. 158 (E.D.Pa. 1974).

Finally, courts have held that to sustain such a claim a prisoner must also allege causation; that is, the prisoner must show a causal connection between the action of prison officials and the prejudice experienced by the inmate in some pending litigation. Thus, "actual injury, [is] a requirement of a claim asserting a violation of the right of court access." Mitchell v. Wydra, 377 F..App'x 143, 145 (3d Cir. 2010); see Butler v. Meyers, 241 F.App'x 818 (3d Cir. 2007)(denying inmate claim where causation not shown). As the appellate court has observed in this setting: "Prisoners have a fundamental right to access the courts. Lewis v. Casey, 518 U.S. 343, 346(1996). However, a prisoner making an access-to-courts claim is required to show that the denial of access *caused* actual injury. Id. at 352-54. Actual injury occurs when a prisoner demonstrates that a 'nonfrivolous' and 'arguable' claim was lost because of the denial of access to the courts. Christopher v. Harbury, 536 U.S. 403, 415(2002)." Tinsley v. Giorla, 369 F. App'x 378, 381 (3d Cir. 2010)(emphasis added).

Here, Kelly has not alleged, or shown, any demonstrable prejudice to him in the litigation of a particular case by demonstrating that a nonfrivolous and arguable claim was lost. Since, "actual injury, [is] a requirement of a claim asserting a violation of the right of court access," Mitchell v. Wydra, 377 F..App'x 143, 145 (3d Cir. 2010); see Butler v. Meyers, 241 F. App'x 818 (3d Cir. 2007)(denying inmate claim where causation not shown), this failure of proof is fatal here and compels dismissal of this claim as well.

**4.** **Kelly Has Failed to Allege Personal Involvement By Defendant Hauck in Some of the Acts Alleged in the Complaint**

Furthermore, with respect to Kelly's complaint that he was sprayed in the face at some time with "oleoresin capsicum," Kelly has not alleged any personal involvement by defendant Hauck in this action. This, too, is a fatal flaw since it is also clear that a claim of a constitutional deprivation cannot be premised merely on the fact that a named defendant was an agency supervisor when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v. Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d

1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

    As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution

Ashcroft v. Iqbal,  129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the alleged misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004).  Since Kelly has not alleged supervisory knowledge and approval of these

actions, he cannot sustain this claim against defendant Hauck and this claim should also be dismissed.

### 5. Kelly May Not Sue Prison Officials Over Housing Decisions

Finally, in his complaint, Kelly alleges he was denied due process when he was held in a special housing unit at the Lebanon County Prison following some disciplinary infraction.  This claim merits only brief consideration since:

> Every court that has addressed this issue in Pennsylvania has determined that prisoners do not have a liberty interest in remaining free from confinement in [a prison special housing unit] or similar housing. See, e.g., Smith v. Dodrill, 2009 WL 62175 (M.D. Pa. Jan 8, 2009); Spencer v. Kelchner, 2007 WL 88084 (M.D.Pa. Jan.9, 2007); Dantzler v. Beard 2007 WL 5018184 (W.D.Pa. Dec.6, 2007); Francis v. Dodrill, 2005 WL 2216582 (M.D.Pa. Sept.12, 2005). Cf. Johnson v. Hill, 910 F.Supp. 218, 220 (E.D.Pa.1996) (holding that, absent a state-created liberty interest that does not exist in Pennsylvania, prisoner placement is a matter of prison administration and a prisoner has no constitutional right to be placed in any particular cell or housing unit).

Brown v. Beard, No. 07-637,  2011 WL 1085890, 20 (W.D.Pa. March 21,2011).

In short, since Kelly has no due process right to dictate his specific housing assignment, this otherwise unadorned due process claim also fails.

Thus, an analysis of this final Poulis factor– the meritoriousness of the plaintiff's claims–reveals that Kelly has currently failed to allege a colorable constitutional claim.  Therefore, in this case all of the Poulis factors call for dismissal of this case.

Having concluded that this *pro se* complaint is flawed in multiple, and profound, ways, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d  229, 235 (3d Cir. 2004). In this case, the current complaint fails to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of this complaint make it clear that he has no right to relief, granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  Therefore, it is recommended that the complaint be dismissed without further leave to amend.

### III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendant's Motion to Dismiss (Doc. 2), be GRANTED and the plaintiff's complaint be dismissed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen  (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed

findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 4th day of October, 2011.

_S/Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge